# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : CRIMINAL CASE NO.: |
| DOUGLAS B. HARDEN | : 1:16-CR-00297-MHC-JSA |

## ORDER AND REPORT AND RECOMMENDATION

After having been convicted on firearms and narcotics trafficking charges in Fulton County Superior Court, Defendant Douglas Harden is now also facing a two-count federal indictment charging him with possession of a firearm by a convicted felon and possession of a firearm in furtherance of a drug trafficking crime. He now moves to dismiss the federal indictment on double jeopardy grounds and moves to suppress the fruits of the search of a residence, which apparently was the basis of Defendant's initial arrest. For the reasons explained below, the Court **RECOMMENDS** that Defendant's Motion to Dismiss [19][22] and Motion to Suppress Evidence [17][23] be **DENIED**.

## FACTUAL BACKGROUND

On March 27, 2014, a Fulton County Superior Court Judge issued a warrant authorizing Atlanta Police Department ("APD") officers to search 36 Howell Street, Apartment 5, Atlanta, GA. [23-1] at 4. This warrant was based on the

application and affidavit executed by an APD investigator, which explained that a APD confidential source ("CS") bought cocaine at the Howell Street apartment in two separate undercover transactions on March 4 and March 24, 2014. *See id.* at 3-4. The investigators used a CS who had successfully purchased narcotics in an undercover role on several other occasions and had otherwise provided reliable information. *Id.* On both occasions, the CS purchased $20 worth of cocaine from an individual at the he knew as "Mudd." *Id.* The investigators knew that the CS did not have the cocaine prior to entering the Howell Street apartment because they searched him immediately prior to the undercover buys and observed him as he approached and entered the apartment. *See Id.* Field tests were positive for cocaine in both cases. *Id.*

The investigator returned the warrant to the Superior Court Judge on April 15th, 2014. [23-2] at 1. The return indicated that an inventory was attached consisting of two pages, although the return that the Government obtained from the state officials and produced to the Defendant in discovery includes only a one page inventory. *Id.* at 2. According to this inventory, the investigators obtained 60.9 grams of marijuana, 8 grams of cocaine, a handgun, a digital scale, $1,226 in U.S. currency and various packaging material. *Id.* The investigators also arrested the Defendant at the scene. *Id.*

Defendant was indicted in Fulton County on four charges: (1) possession of

cocaine with intent to distribute; (2) possession of marijuana with intent to distribute; (3) possession of a firearm during the commission of a felony; and (4) possession of a firearm by a convicted felon. Defendant subsequently entered a no contest plea pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), and thereby was convicted of each of these state charges. A federal grand jury empaneled in this District then issued this Indictment, which charges Defendant with being a felon in possession of a firearm and possessing a firearm in furtherance of a drug trafficking crime, in violation of federal law.

## DISCUSSION

**A.     Defendant's Motion to Dismiss**

It is undisputed that Defendant has already been previously convicted of possession of a firearm as a convicted felon, drug trafficking, and other violations of the State of Georgia's criminal code based on the same events at issue in this case. Thus, on September 26, 2016, Defendant filed a Motion to Dismiss Indictment Based on the Double Jeopardy Clause [19][22].

The Fifth Amendment to the United States Constitution "protects defendants against successive prosecutions for the same criminal offense." *United States v. Baptista–Rodriguez*, 17 F.3d 1354, 1360 (11th Cir.1994). But "identical offenses are nevertheless different for purposes of the Double Jeopardy Clause when they are charged by separate sovereigns." *Id.; United States v. Lanza*, 260 U.S. 377,

382 (1922) ("an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each."); *Abbate v. United States*, 359 U.S. 187 (1959); *Bartkus v. Illinois*, 359 U.S. 121 (1959). Defendant criticizes the wisdom and fairness of these principles, although candidly acknowledges that the "dual sovereignty" doctrine is binding on this Court based on current precedents. *See* Pl. Br. [19] at 5-9.

Defendant invokes the Supreme Court's recent decision in *Puerto Rico v. Sanchez Valle, et al.*, __ U.S. __, 136 S.Ct. 1863 (2016). In that case, the Court found that the Double Jeopardy clause barred the Commonwealth of Puerto Rico from separately prosecuting two defendants for the same transactions for which they had previously been convicted in federal court. *Id.* at 1876-1877. That case, however, did not eliminate or limit the dual sovereignty principle as it relates to successive State and Federal prosecutions. Rather, the Supreme Court addressed a question entirely irrelevant to the Court here: whether a United States territory, such as Puerto Rico, is in fact a separate sovereign from the United States Government. The Court answers that question in the negative at least as it relates to Puerto Rico. *Id.* The Court noted that the test of dual sovereignty turns on the "ultimate source" of the power undergirding the respective prosecutions. *Id.* at 1871. Because the Court found that the "ultimate source" of Puerto Rico's prosecutorial authority was statutory action by the U.S. Congress, the Court

concluded that the Commonwealth of Puerto Rico was not a dual sovereign for purposes of the Double Jeopardy Clause. *Id.* at 1874-1877.

*Puerto Rico* by its own terms has no impact on the application of the dual sovereignty doctrine to a prior prosecution by the State of Georgia. To the contrary, the Court reaffirmed the long standing principle that "the States are separate sovereigns from the Federal Government (and from one another)." *Id.* at 1871. The Defendant here has not been previously convicted for the same conduct in the courts of Puerto Rico, Guam, the U.S. Virgin Islands, American Samoa, or any other U.S. territory. Thus, *Puerto Rico* does not change the result that this Court is compelled to reach here based on binding precedent, which is to deny Defendant's double jeopardy challenge to his federal prosecution. Defendant's Motion to Dismiss should be **DENIED**.

### B. Defendant's Motion to Suppress Evidence

Defendant also moves to suppress the fruits of the March 27, 2014 search of the Howell Street Apartment that was authorized by the Fulton County Superior Court. Defendant argues that the warrant was not supported by a showing of probable cause, and that the APD failed to timely return the warrant and that, when it did return the warrant, it attached an incomplete inventory of the items seized. For the reasons explained below, these arguments fail and the Motion should be denied.

      **1.**    *Probable Cause*

A judicial officer asked to issue a search warrant must make a practical common sense decision, given all the facts set out in the application, that there is a fair probability that contraband or evidence of a crime will be found in a particular place. *See Illinois v. Gates*, 462 U.S. 213 (1983). Courts reviewing the sufficiency of warrant applications after-the-fact should not do so in a hyper-technical manner; Rather, courts must employ a realistic and common-sense approach so as to encourage recourse to the warrant process and to recognize the significant deference afforded to the decisions of the issuing judge. *Id.*; *United States v. Miller*, 24 F.3d 1357 (1994). Ultimately, the question is "whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984).

Moreover, regardless of whether it agrees that the affidavit established probable cause, the reviewing court must deny suppression unless the affidavit was so lacking as to render official belief in the validity of the warrant entirely unreasonable. *United States v. Martin*, 297 F.3d 1308 (11th Cir. 2002). This is because the purpose behind the exclusionary rule–to deter law enforcement officers from violating the Constitution–is not met where an officer's reliance on a search warrant issued by a neutral judge was objectively reasonable. *See United States v. Leon*, 468 U.S. 897, 926 (1984).

Applying these deferential standards, the Court easily concludes that the APD investigator's affidavit supported the Fulton County Superior Court's decision to issue the warrant. The affidavit detailed two instances by which a CS purchased drugs from a specific individual ("Mudd") at the Howell Street Apartment within a few weeks of the issuance of the warrant. The affidavit explained that the CS had a reliable track record of assisting in undercover drug buys. Because this established the CS's first hand opportunity to observe and take part in the criminal activity, and also established his or her reliability on prior occasions, this information itself met the standards set forth by the Eleventh Circuit to show probable cause. *See United States v. Brundidge*, 170 F.3d 1350, 1353 (11th Cir. 1999) (information from a CS about drug transactions he/she observed or participated in first hand, in addition to a statement from the affiant that information provided by the CS on several past occasions had proven to be 'truthful and reliable,' was sufficient to show probable cause). Moreover, the affidavit provided corroborative information, in that the investigators searched the CS before and after his transactions at the Howell Street Apartment, and observed as he approached and entered the premises. These facts allowed the reasonable inference that the Howell Street Apartment was the source of the drugs obtained from the CS. *See Gates*, 462 U.S. at 230-235 (anonymous tip of a defendant's drug dealing activities, when combined with the investigators' corroboration of

certain otherwise innocent travel details provided in the tip, was sufficient to establish probable cause).  Therefore, the warrant was supported by probable cause or at least the officers acted reasonably in relying on the validity of this warrant.

Although Defendant's argument is quite sparse, it appears most focused on the specific authority granted by the Superior Court Judge to allow the APD to search the apartment for firearms.  This is meritless.  "It is uniformly recognized that weapons are often as much 'tools of the [drug] trade' as the most commonly recognized narcotics paraphernalia." *United States v. Terzado–Madruga*, 897 F.2d 1099, 1120 (11th Cir.1990); *United States v. Cruz*, 805 F.2d 1464, 1474 (11th Cir.1986) ("Of course, numerous cases have recognized that guns are a tool of the drug trade. There is a frequent and overpowering connection between the use of firearms and narcotics traffic."); *United States v. Perez*, 648 F.2d 219, 224 (5th Cir.1981) ("[E]xperience on the trial and appellate benches has taught that substantial dealers in narcotics keep firearms on their premises as tools of the trade almost to the same extent that they keep scales, glassine bags ..., cutting equipment, and other narcotic equipment.") The evidence of a commercial drug dealing operation based out of the Howell Street Apartment thus necessarily suggested probable cause of the presence and of firearms.[1]

---

[1] Moreover, as a practical matter, even if firearms had not been specified in the warrant, there is no reason to believe that the execution of a warrant that only authorized the search for drugs would have been any less extensive, and that the

### 2.  *Alleged Defects In the Warrant Return/Inventory*

Alternatively, Defendant argues that the warrant was defective because it was not returned promptly and, when returned, included a potentially incomplete inventory.[2]  Defendant cites Rule 41(f), FED. R. CRIM P., which provides that "[t]he officer executing [a warrant issued in federal court] must promptly return it," and "must prepare and verify an inventory of any property seized."  Defendant's argument fails on several levels.

First, Rule 41 only applies to warrant applications from "federal law enforcement officers."  FED. R. CRIM P. 41(b).  Rule 41 does not apply to warrants issued by state courts to state officers pursuant to a state investigation, "even if the evidence or contraband recovered is used in a federal criminal prosecution."

---

firearms would not have been found in plain view anyway.  Once discovered in plain view alongside other evidence of a drug trafficking operation, the firearms would have been easily subjected to seizure under the "tools of the trade" case law discussed above.

[2] The Government represents that the one-page inventory produced to the Defendant and introduced into this record is a true and correct copy of the inventory obtained from Fulton County officials, and the Government proffers that evidence would establish that this inventory was the same document returned to the Superior Court judge.  According to the Government, in other words, the reference in the return to an attached two-page inventory was a mere typographical error.  This Court, however, cannot rely on a proffer of evidence outside of the record without allowing an evidentiary hearing.  Thus, for purposes of resolving this motion, the Court interprets this evidence in the light most favorable to the Defendant and therefore assumes that the APD officers attached the wrong inventory sheet to the warrant return.

*United States v. Pennington*, 328 F.3d 215, 220 n. 2 (6th Cir. 2003).

Defendant's only argument is that Rule 41 might nevertheless apply, if and to the extent federal authorities were actually behind the acquisition and execution of this warrant.  *See* Motion [23] at 4.  Defendant does not supply or allege any facts to suggest such federal involvement, but he requests an evidentiary hearing for the purpose of enabling him to explore such a possibility.  The Defendant, however, must rely on more than conclusory speculation to obtain an evidentiary hearing.  *See United States v. Cooper*, 203 F.3d 1279, 1285 (11th Cir. 2000) (*quoting United States v. Sneed*, 732 F.2d 886, 888 (11th Cir. 1984)).  In other words, "where a defendant in a motion to suppress fails to allege facts that if proved would require the grant of relief, the law does not require that the district court hold a hearing independent of the trial to receive evidence on any issue necessary to the determination of the motion." *Sneed*, 203 F.3d at 888.  Rather, "[a] motion to suppress must in every critical respect be sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that a substantial claim is presented. . . .  A court need not act upon general or conclusory assertions. . . ." *United States v. Richardson*, 764 F.2d 1514, 1527 (11th Cir. 1985) (internal citations omitted)).  Here, Defendant's mere conjecture that an evidentiary hearing may possibly reveal some secret federal-state collusion in the acquisition of this warrant falls far short of these standards.

Second, even as to federal warrants, violations of the ministerial requirements of Rule 41 "are essentially ministerial in nature and a motion to suppress should be granted only when the defendant demonstrates legal prejudice or that non-compliance with the rule was intentional or in bad faith." *United States v. Marx*, 635 F.2d 436, 441 (5th Cir., Unit B, Jan. 27, 1981) (no suppression warranted with regard to warrant that was not properly served at the premises)[3]; *see*, *e.g., United States v. Wilson*, 451 F.2d 209, 214 (5th Cir. 1971) (refusing to suppress evidence on the basis of a failure to properly return and file a warrant); *United States v. Henry*, 939 F.Supp.2d 1279, 1289 (N.D.Ga. 2013) (failure to timely sign affidavit not a basis for suppression). Again, Defendant does not supply or allege any facts to suggest bad faith by the officers or prejudice to himself from the possible mixup in attaching an incorrect inventory and/or in failing to return the warrant more quickly, nor is bad faith or prejudice evident on its face. Instead, Defendant again requests an evidentiary hearing so that he can fish for such evidentiary support. But as noted above, such conclusory speculation does not trigger a hearing. Defendant's argument must therefore be denied.[4]

---

[3] The Eleventh Circuit, in the *en banc* decision, *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

[4] Defendant notably supplies no authority to suggest that the return of this warrant 18 days after execution was in violation of Rule 41's requirement that the return and inventory be filed "promptly." Neither the rule itself nor any authority

This case is **READY FOR TRIAL**.

**IT IS SO RECOMMENDED** this 13th day of January, 2017.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE

---

cited by the parties specifically defines this term, and 18 days is not on its face so extended of a delay as to be obviously un-prompt. Nevertheless, it is not necessary to determine whether this return was sufficiently "prompt" within the meaning of Rule 41, because Defendant has failed to adequately support his conjecture that Rule 41 applies and that noncompliance with Rule 41 was prejudicial and in bad faith.